UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ANDREW S. DODGE and
DANELLE L. DODGE,

    Plaintiffs,

v.                                                 Case No.: 6:22-cv-00221-WWB-DCI

LAUREL M. LEE, Florida Secretary of
State, ASHLEY MOODY, Florida
Attorney General, and LORI SCOTT
Supervisor of Elections, Brevard County,

    Defendants.
_____/

## **PLAINTIFFS OPPOSITION**

## **TO DENY THE DEFENDANTS' MOTION TO DISMISS**

Plaintiff's Andrew and Danelle Dodge here by move the court to DENY the motion put forth by Ashley Moody, the Florida Attorney General, to dismiss this case, and to DENY the motion put forth by Lori Scott, Brevard Supervisor of Elections, to dismiss this case, and to DENY the motion put forth by Laurel M. Lee, the Florida Secretary of State, to dismiss this case.

### **BACKGROUND:**

On February 4, 2022, Plaintiffs, pro se, sued the Florida Attorney General, the Florida Secretary of State, and the Brevard Supervisor of Elections bringing a constitutional challenge to required candidate oaths for partisan and non-partisan candidates for public office in a timely fashion after becoming aware of the new law. Plaintiffs seek preliminary and permanent injunctive relief against enforcement of each party, nonparty, or write-in candidate for federal

Page **1** of **20**

office completing an oath of party, nonparty, or write-in status over the 365-day period before the beginning of qualifying preceding the general election for that office as a condition precedent to qualify for nomination or election. This condition precedent to run for public office is set forth in section SB90, Laws of Florida ch. 2021-11, section 12 that includes section 99.021(2), Florida Statutes that became effective May 6, 2021 ("Candidate Oaths Amendment"). Plaintiffs allege the Candidate Oaths Amendment effectively bars one of them, Andrew Dodge, from the right to run for office since he had changed to No Party Affiliation within the 365-day period, and restricted how the other, Danelle Dodge could run for office in a manner that represents her best when running in her district. Plaintiffs contend this condition precedent to qualify curtails their freedom of speech under the First Amendment and their right to free association, and presents a Hobson's choice between not running or committing perjury, chills votes and funding, and imposes more strict qualifications than set forth by Art. I, section 2, U.S. Const. Also, Plaintiffs request the Court strike down the allegedly unconstitutional Candidate Oaths Amendment or remove all party designations from all elections when voting and from elected offices and require each candidate to follow the same signature guidelines without any option of pay to bypass.

The Federal Elections in the United States are U.S. House of Representatives, Senate, and President. These all have very specific language and their own Oath in the U.S. Const. with no room to alter or append.

Ashley Moody, the Florida Attorney General and Lori Scott, the Brevard Supervisor of elections, has put forth a motion to dismiss based on the Claim of the motion, the Jurisdiction, Standing, Failure to State Claim, and the Plaintiff's being Pro Se. Laurel Lee, the Secretary of State, has put forth a motion to dismiss based on Failure to State Claim.

## ARGUMENT:

**CLAIM:**

The Defendants have stated that the complaint filed did not meet standards of review. Rule 5.1 of the Federal Rules of Civil Procedure states

> (a) NOTICE BY A PARTY. A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly:
>
> (1) file a notice of constitutional question stating the question and identifying the paper that raises it, if:
>
> (A) a federal statute is questioned and the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity; or
>
> (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
> (2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned—or on the state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose.
>
> **Committee Notes on Rules—2006**

Rule 5.1 implements 28 U.S.C. §2403, replacing the final three sentences of Rule 24(c). New Rule 5.1 requires a party that files a pleading, written motion, or other paper drawing in question the constitutionality of a federal or state statute to file a notice of constitutional question and serve it on the United States Attorney General or state attorney general.

As I am sure your honor is aware we have raised a question on the constitutionality of the SB90 365 day qualification law according to Federal Civil and Procedure Rules 5.1. We raised this issue as soon as we became aware of it. We have not argued an ignorance of the law, but rather a timely filing of this complaint of this law's constitutionality. Furthermore this Rule 5.01 does not dictate the format necessary to raise this question. We technically, comically, could have raised this question in crayon on a cocktail napkin and it would still be a valid constitutional question. Florida Civil code 1.071 mirrors this same language.

U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995), "was a case in which the Supreme Court of the United States ruled that states cannot impose qualifications for prospective members of the U.S. Congress stricter than those specified in the Constitution. The decision invalidated the Congressional term limit provisions of 23 states." This case demonstrates that the qualifications for Article 1 Section 2 and 3 stand as written, and were not meant to be appended to, and not with Florida's own "qualification oath". Article I, Section 4, Clause 1 "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the U.S. Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators." This clause

does not provide for altering qualifications but only strictly offers states Times, Places, and Manner for elections.

In <u>Williams v. Rhodes, 393 U.S. 23 (1968)</u> – "The Court held that the heavy burden placed on third parties by the law was discriminatory and violated the First Amendment's right to free association and the Fourteenth Amendment's equal protection clause." This case demonstrated the right to free association and the equal protection laws, proving that candidates deserve to have equitable treatment regardless of how the candidate decides to run. This new Florida law clearly is unequal protection for a person that has changed affiliation or has just become of voting age or recently moved to Florida.

In Storer v. Brown, 415 U.S. 724 (1974) "the Supreme Court upheld California's sore loser statute, which banned ballot access in the general election for independent candidates who either voted in the preceding primary election." While this decision demonstrates a restriction on a candidate, this had a narrow scope within the same race, indicating that someone could not in effect run twice, once in the primary lose then run again in the General Election to continue the fight. The SB90 law is not a continuation of a fight, nor a sore loser law, but restricting a fight from happening in the first place and impacting how the candidate can run at all. Further SB90 creates a situation where a candidate is barred to appear on the ballot at all. SB90 is a qualification Oath, which is demonstrated since there is also an Oath placed on write-in candidates. This proves the SB90 law goes further than attempting to stop a "Sore Loser" scenario.

In <u>Anderson v. Celebrezze, 460 U.S. 780 (1983),</u> "the Supreme Court struck down on First Amendment grounds a state law that imposed early filing requirements for an independent

presidential candidate who wished to appear on the general election ballot." "Writing for the Court, Justice John Paul Stevens asserted that in order to determine the constitutionality of the Ohio law, one had to weigh the character and magnitude of the injury to Anderson and his supporters' First and Fourteenth Amendments rights against the interests asserted by the state in justifying the burden imposed by its law." The situation is clearly different than a sore loser campaign situation and instead is directly aimed at the freedom of the candidate's association. The Defendants appear to believe that a qualifying oath that requires 365 days prior to the qualification date, does not constitute a stricter definition than 25 years old, a U.S. Citizen, and living in the district, I would assert the defendants do not understand the word stricter. The dictionary defines "Stricter" as being "more rigid or exacting in enforcing rules." Furthermore, if a Citizen with a Democrat Preference decided to run as Non Partisan, that should have no bearing on qualifying for the position and furthermore Preferential Political Parties are not mentioned in the constitution. Political Preferential Parties were never meant to lock people in on how they vote or run. If one is locked into what party they are, then what is the point of voting at all?

**DEFENDANTS ROLE:**

All three of the defendants took an oath "I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States.", however if they are enforcing an unconstitutional law, then they are violating the Unites States Constitution. Ignorance of the law is no excuse. <u>Davis v. Strople, 158 Fla. 614, 621, 29 So. 2d 364, 367 (1947)</u>.

The Attorney General for the state of Florida has the obligation to inform the legislature of a legal opinion on a potential law, as well as to inform the Governor before he signs it into law. Furthermore the Florida Attorney General has the requirement to serve the citizens of Florida and is charged with protecting the citizens of Florida with constitutional laws. This would make the Florida Attorney General culpable by not acting immediately to inform the public of an unconstitutional law. Ignorance of the law is no excuse, especially for the Florida Attorney General. <u>Davis v. Strople, 158 Fla. 614, 621, 29 So. 2d 364, 367 (1947)</u>. The Florida Attorney General has the power and the duty and should publicly announce that this law is unjust and that the law will not be enforced. See the Oath of Office again. Furthermore the Florida Attorney General would be the one to prosecute an offender of this law when it is violated. Since the Florida Attorney General is the Chief Legal Officer, it is not a question of if someone is prosecuted if they violate this law, but when, otherwise an unequal protection scenario occurs. Should we really go as far as committing perjury and be thrown in jail for 5 years, as others have spent, just so we can bring this unconstitutional voting issue situation that the Florida Attorney General clearly believes is ok, up for debate? That question alone proves how this has chilled free speech and how many would shy away from the possibility of a jail sentence.

The Secretary of the State of Florida in the same way by informing the general public of a law known to be unconstitutional is culpable. She has general counsel afforded to her to ensure she upholds the law. She could at any time remove all language to a law she knows to be unjust and even state that the law is unconstitutional and has the duty to refuse to carry out any unconstitutional order of enforcing this law by her very Oath of Office.

Lori Scott has the same Duties in the Brevard County Department of Election as the Secretary of State. Yet both the Secretary of State and the Brevard Supervisor of Elections have

brought attention to this unconstitutional law and ensured everyone knows they are required to follow it.

**JURISDICTION:**

The Supremacy Clause establishes that the federal constitution and federal law generally, take precedence over state laws, and even state constitutions. The U.S. Const. clearly lays out the requirements for the Federal Offices.

<u>Article I, section 2</u> "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen."

The <u>10th Amendment</u> says that "the Federal Government only has those powers delegated in the Constitution. If it is not listed, it belongs to the states or to the people." The requirements are clearly listed and have been since 1776, so this would not be a right delegated to the states.

The <u>11th Amendment</u>, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." In <u>*Alden v. Maine,* 527 U.S. 706 (1999)</u>, "was a decision by the Supreme Court of the United States about whether the United States Congress may use its Article I powers to abrogate a state's sovereign immunity from suits in its own courts". Congress, in fact the first congress, spelled out the requirements literally in <u>Article 1, Section 2</u>, so it seems this would be Article 1 powers. The <u>14th amendment</u> – "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction equal protection of the

laws." This again spells out the requirement for laws to provide equal protection and that the State of Florida has no right to make changes or rewrite Article 1, Section 2. Fitzpatrick v. Bitzer - 427 U.S. 445 – "Congress has the power to authorize private suits against individual states under Section V of the 14th Amendment, which might be impermissible in other contexts." The First Congress wrote the constitution and Article 1, Section 2. 15th amendment – "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude. The Congress shall have power to enforce this article by appropriate legislation." Congress did enforce the Article 1 Section 2 and 3 portions of the U.S. Const. in the Voting Rights Act. 19th amendment – "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex. Congress shall have power to enforce this article by appropriate legislation." Once again this is Article 1, Section 2, and the Voting Rights Act and other amendments after the 11th amendment. Another example the 26th amendment – "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age. Congress shall have power to enforce this article by appropriate legislation." The State curtailing, by the enforcement of such officers as the Florida Secretary of State, the Florida Attorney General, and the Brevard County Election Supervisor, in deciding who exactly can be on the ballot, does in fact alter the right of the citizens to vote. If you are only given a choice of two candidates that are "State Approved" did you really have the opportunity and or freedom to vote who you believe represents you?

The majority opinion in U.S. Term Limits Inc v. Thornton stated "that the right to choose representatives belongs not to the States, but to the people."

Page 9 of 20

Voting Rights Act, banned the use of a literacy test as a prerequisite to register to vote. The state by choosing whom it allows to be on the ballot with these new qualifications creates a type of literacy test for the public because the only other possibility would be a write in candidate. A write-in candidate still require an oath, but different from the 365 days for a write-in candidate. If the write-in candidate is required to get qualified at the same time why would the state not just print them on the same ballot, except to create an unequal playing field? The state of course would throw out any ballots spelled incorrectly since it could be a different candidate, which would create a literacy test.

Voting Rights Act, Section 4(f)(2), to register and vote as well as to get information relating to the electoral process in a manner that will ensure their meaningful participation in the electoral process. If the violation of the protection is intentional, then this violation is also a violation of the Fifteenth Amendment. The Supreme Court has allowed private plaintiffs to sue to enforce these prohibitions.

In Thornburg v. Gingles (1986) the United States Supreme Court explained with respect to the 1982 amendment for section 2 that the "essence of a Section 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." The United States Department of Justice declared that section 2 is not only a permanent and nationwide-applying prohibition against discrimination in voting to any voting standard, practice, or procedure that results in the denial or abridgement of the right of any citizen to vote on account of race, color, or membership in a language minority group, but also a prohibition for state and local officials to adopt or maintain voting laws or procedures that purposefully discriminate on the basis of race, color, or membership in a language minority

group. The state deciding with unequal bias who can be on the ballot, does discriminate in its very nature.

U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779 (1995), "was a case in which the Supreme Court of the United States ruled that states cannot impose qualifications for prospective members of the U.S. Congress stricter than those specified in the Constitution. The decision invalidated the Congressional term limit provisions of 23 states."

How can we take the 11th amendment or even the structure of the original constitution into account, if the state has literally disregarded and substituted their own Article 1 Section 2. For example, if the state of Florida decided they wanted to pass a law that the Supremacy Clause and Article III does not apply if a liberal or the opposite a conservative president is in power. The law would stand and eliminate anyone from questioning the law since Florida would claim the 11th Amendment gives them sovereignty. This would indicate a problem and a possible type of secession by the state. What this law imposes is the first step to that end. How can a plaintiff win on an 11th Amendment claim while the defendants literally disregard parts of the constitution? You cannot claim foul that someone isn't following a contract and use enforcement in the contract when you literally rewrote parts of the contract. This is not the intention of the United States Constitution, yet this is exactly what Florida is doing by rewriting their own copy of the U.S. Const. with their own constitutional arguments to supersede those in the U.S. Const. and with government officials carrying them out. Now Floridians have different U.S. Const. rights for representatives than those of citizens of every other state. This indicates an unequal protection under the law.

The only court that has the jurisdictional right to resolve a rewrite of <u>Article 1, Section 2</u> would be the U.S. Federal Court. Furthermore a state court might not be impartial since state court positions are voted on using the same laws in question, chilling the race, and only allowing state authorized candidates to be involved.

**STANDING:**

The Florida Attorney General and the Brevard Supervisor of Elections attorneys have claimed we do not have standing to raise this claim.

<u>Article 1, Section2</u> "No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen."

We, the Plaintiffs in this case, are both over the age of twenty five and are U.S. Born Citizens of the United States. We have always paid our taxes and deserve the chance to help decide how our tax dollars are spent and help our fellow citizens in our community. According to the <u>U.S. Constitution</u> we therefore qualify to run for this office and should have standing. Furthermore I, Andrew Dodge, had announced to a couple of elected officials that I wanted to run as Non Partisan, the Mayor of Cape Canaveral and a City Council Member of Cape Canaveral. Both individuals questioned my ability to run that way because of this new 365 day requirement. I am also disabled and unable to sit or stand for lengths of time, and while ultimately I am not sure I am up to the task of the actual job, it should not be up to the State of Florida to discriminate and decide for me, and instead should be up to my family or the people of the community. Danelle Dodge is currently a candidate for the office of Florida's 8th Congressional District and registered with the Federal Election Commission as a Democrat.

Danelle felt that in a district that is primarily dominated by constituents with a preference for republican candidates that she needed an alternative way to talk about the issues, and not to allow the question of party to immediately dominate and end up disqualifying oneself in the eye of constituents when the community already agrees on so many issues. Instead she wished to talk about real issues facing the entire community. Danelle has the background to be the next U.S. Congressional Member, she connects with people on all levels and I am proud of her, and I believe she will be the next U.S. Congressional Member of District 8. If someone who is clearly a candidate is questioned on standing then what the Florida Attorney General's Counsel is proposing is dangerous, that no one actually ever would have standing to ever question this law. This is wrong and would open the door to make many laws regarding voting and free speech that no one could ever have standing to argue. This is not the intent of the establishment clause, because if there was such a loop hole there would be no reason to have the third branch of government.

This actually further goes to the heart of the question we have raised. We have stated the State does not have the authority according to <u>Article 1 section 2 and 3, the 1st, 14th, 15th, 19th, 26th amendments</u> to choose who can be a candidate, and yet with this standing argument they are doing exactly that. The Florida State Attorney General, and the Brevard Supervisor of Elections in their official capacity is in effect choosing who they believe is a worthy candidate and who is not by their argument that we do not have standing. This means that only the state officials can decide which candidates are viable. The Attorney General of Florida and the Supervisor of Elections for Brevard County have chosen who does or does not qualify in their official capacity, even though Danelle Dodge is officially registered with the federal government, the FEC, in the capacity as running for a federal position. So then if this case is dismissed on standing, who then

will ever meet this level for a standing requirement to challenge this unconstitutional law for a Federal position?

The majority opinion in U.S. Term Limits Inc v. Thornton stated "the right to choose representatives belongs not to the States, but to the people."

If we hold this to be true, then it is the right of the people to choose the candidate. And that is the question at hand, will the citizens be given the choice, or does the state get to unlawfully choose who is an acceptable candidate, who they associate with, how they run their campaign, and who belongs on the ballot for the people to vote on. The only places I am aware of that the State chooses which candidates are authorized to run are not considered democratic states by the world. The question then becomes one of democracy vs dictatorship.

The overbreadth doctrine," which provides that a regulation of speech can sweep too broadly and prohibit protected as well as non-protected speech. A regulation of speech is unconstitutionally overbroad if it regulates a substantial amount of constitutionally protected expression; this provides a mechanism for a standing argument". To have the State choose who can represent the people would have such a profound effect on all Floridians ability to exercise their free speech by being able to choose who they wish to represent them. There is not a broader sweeping impact on Free Speech that I can think of. This law simply cannot stand on its face and has to be challenged.

**PRO SE:**

The Counsel for the Florida Attorney General and the Brevard Supervisor of Elections has made an assertion that we being Pro Se are not capable of being plaintiffs in this case, and that the Federal Courts are in affect our counsel in this case and the court does not have the right to decide our case on their own merits. To date the District Court has provided no help in this case, other than the same help they provide to all attorneys and that is the rules and procedures. The Defense makes the argument in their motion to dismiss, that one cannot argue possible outcomes only factual ones, yet they are doing just that in arguing the court will become our legal counsel. Opposing counsel has also stated that this case must not have any further amendments or additions and must be dismissed with prejudice. This is one of the reasons we declared our independence from England, is to ensure that due process follows what is right and lawful and not who files paperwork most correctly. Furthermore the 6th Amendment guarantees us the right to represent ourselves, and we have made the case, and now are articulating with more detail and rebutting their assertions, but the substantive claim is still the same.

I would raise the question that the attorneys for the Florida Attorney General's office and the Brevard Supervisor of Elections does not have cause to question this and has not treated us with the respect we deserve from the start. While we are not Attorneys at law, we are both professionals in our own careers. I would assert that because of our status the Attorneys for the Florida Attorney General and the Brevard Super of Elections have put motions forth in Bad Faith. For example, they have questioned our ability to be pro se. Is this common for a senior attorney for opposing counsel to put forth this kind of motion against another attorney without cause? They have raised the argument that we do not have standing when we clearly do. This is after we had an email exchange with the Florida Attorney General's attorney where we discussed this question in emails prior in good faith on our part. See Exhibit 1. The Florida Attorney

General's attorney also claimed we didn't properly raise the question of a constitutional question prior to this motion, and we replied with the civil rules of procedure. So the attorney for the Florida Attorney General was well aware that the form the constitutional question comes in is of no consequence. He put forth a motion requiring us to list any connection with any organization or funding backing this case. There is no one other than Danelle and myself (Andrew Dodge) behind this lawsuit, except my own wallet and my sense of civic pride. Furthermore the Attorney representing the Florida Attorney General presented himself incorrectly. The attorney for the Florida Attorney General did not properly file and make the court or the plaintiff, aware that he was counsel for the Florida Attorney General, nor did he mention this in prior contact. He did not make his motion of being the attorney of record for the Florida Attorney General until the same time he put forth the motion to dismiss. He did not attempt to negotiate in good faith see exhibit 1, our email conversation, he filed his motion prior to a planned phone call on Monday February the 28th as you can see from the emails. Which could only mean he violated section 3.01g and signed an affidavit that he completed talks with us, and did not have any arguments of merit for the case and only wished to deprive us of due process by bullying us with legal technicalities? I would ask the court to hold this attorney to the same standard, and if we being Pro Se are required to follow all procedures of the court, and ignorance is not an excuse for the law, which we have done so to the best of our abilities, then an attorney of his stature should be well versed and have the same requirement to follow the orders of the court.

    We also wish to make clear that we have been injured by this law. We have been unable to run a campaign the way we desired, limiting and chilling our free speech. We cannot go out and tell our fellow citizens we wish to represent all of them without regard to partisanship as citizens of the community in the best way possible. We in fact have to rethink every action on

how that appears in a partisan lens. In 1 weeks time Danelle Dodge has received over 200 signed petitions for office. She was set back a months time running for office as she could not get signatures, since Florida law requires the signature petition, exhibit 2, includes the party that you are running under. The State decided for Danelle what the best way to connect with the community is. The State makes clear that any collected signatures not under the party you qualify for will be discarded. This has set back Danelle's campaign by a month's time in regard to donations of several thousand dollars received the first week. Early revenue could have occurred much earlier and been put to use much faster. Everyone should have the right to run and put forth a strategy of their liking, not one that the State has preapproved. This all shows we are serious about elections and running for office, and not citizens just wishing to contest laws as the Florida Attorney General and the Brevard Supervisor of Elections has so carelessly called out.

We have the right as citizens to represent ourselves how we see fit, and we deserve equal protection under the law, but that is impossible if Florida has different requirements than other states in the union.

**SUMMATION:**

WHEREFOR, we have made a concrete claim that this law has applied a heavy burden on real citizens of the United States with a real opportunity for the job of U.S. House of Representatives outlined in <u>Article 1 of the U.S. Constitution</u>, with real injuries and hardships in addition to limiting our free speech and our ability to participate in the Democracy of the United States of America the way we see fit in order to direct represent our neighbors and to help decide where our taxes are being spent. We have further shown this being a Federal Election, and a Federal

Job outlined in the U.S. Const. written by Congress, that the Federal Courts are the only applicable court to handle this conflict. The state of Florida does not have the right under the supremacy clause to introduce new revisions to the U.S. Const. that was drafted by the framers of the original congress. We have clearly shown this law is unconstitutional and is not equitable. The defendants also claim they are immune, while disseminating information, carrying out and being culpable in denying or being the imminent threat behind ensuring individuals follow this unconstitutional state law. Furthermore waiting to see whether a candidate's name is printed on the ballot would be far too late for any possible resolution. So the only possible determination is that they must be ordered to carry out only constitutional laws according to the U.S. Constitution and their constitutional duties and opposing counsel's motions to dismiss must be **DENIED**.

Respectfully Submitted,
Plaintiff's
Andrew and Danelle Dodge
dodgea@totalrecallinc.com
395 Harbor Dr.
Cape Canaveral, FL 32920
Telephone: (253) 278-9301

## Local Rule 3.01(g) Certification

I hereby certify that movant has conferred with the opposing parties on February 23, and 24, 2022, and March 1st, and March 8th, in a good faith effort to resolve this PLAINTIFFS OPPOSITION TO DENY THE DEFENDANTS' MOTION TO DISMISS by agreement; the parties disagree on resolution of this PLAINTIFFS OPPOSITION TO DENY THE DEFENDANTS' MOTION TO DISMISS. The parties conferred via exchange of emails and phone calls.

Charles Schreiber attorney for the Florida State Attorney General officially responded with "no conferral or certification of conferral is necessary."

Maria Breen attorney for the Brevard Supervisor of Elections responded with "Thank you for letting us know. We will await service of the document and consider a reply."

Ashley Davis attorney for the Florida Secretary of State conferred over phone and email. However disagreed on any resolution.

Respectfully Submitted,
Plaintiff's
Andrew and Danelle Dodge
dodgea@totalrecallinc.com
395 Harbor Dr.
Cape Canaveral, FL 32920
Telephone: (253) 278-9301

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished on this 8th day of March 2022, via the CM/ECF System, U.S. Mail, and e-mail (as applicable), to:

Deborah L. Moskowitz Quintairos Prieto Wood & Boyer P.A.
255 South Orange Avenue, Floor 9 Orlando, Florida 32801-3445
dmoskowitz@qpwblaw.com Attorneys for Defendant Lori Scott, Supervisor of Elections Brevard County, Florida

Ashley E. Davis Deputy General Counsel Florida Department of State R.A. Gray Building 500 South Bronough Street, Suite 100 Tallahassee, Florida 32399-0250
ashley.davis@dos.myflorida.com
stephanie.buse@dos.myflorida.com
Attorneys for Defendant Secretary of State, Laurel M. Lee

Charles J. F. Schreiber, Jr. Senior
charles.schreiber@myfloridalegal.com
Office of the Attorney General State Programs Litigation Bureau The Capitol PL-01 Tallahassee, Florida 32399-1050
Telephone: (850) 414-3300 Telefacsimile: (850) 488-4872 Attorney for the Attorneys for Defendant Ashley Moody, Florida Attorney General

Andrew and Danelle Dodge